**Vernon Vu LUONG, Petitioner–Appellant,**

v.

**CIRCUIT CITY STORES, INC., Respondent–Appellee.**

No. 02–56522.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 7, 2003.

Filed Jan. 30, 2004.

As Amended Feb. 19, 2004.

Mai D. Wells, Infinity Law Group, Anaheim, CA, for the petitioner-appellant.

Rex Darrell Berry, Livingston & Mattesich, Sacramento, CA, for the respondent-appellee.

Before: KOZINSKI, FERNANDEZ, and RYMER, Circuit Judges.

Opinion by Judge RYMER; Dissent by Judge KOZINSKI.

RYMER, Circuit Judge.

We must decide whether there is an independent basis for federal jurisdiction to hear a challenge to an arbitration award of zero dollars.

Vernon Vu Luong filed a petition in federal district court to vacate an arbitration award in favor of Circuit City Stores, Inc., on his claim that Circuit City violated his rights under the Americans with Disabilities Act, 42 U.S.C. §§ 12101–12213(ADA). The court dismissed the action as the award was less than the jurisdictional amount ($75,000) required for diversity jurisdiction under 28 U.S.C. § 1332(a). The court also held that even though the petition alleges that the arbitrator acted in manifest disregard of federal law, Luong's petition does not raise a federal question, 28 U.S.C. § 1331, because the presence of federal questions in

the underlying arbitration is insufficient to confer jurisdiction under *Garrett v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 7 F.3d 882 (9th Cir.1993).

We agree that the amount in controversy for purposes of diversity jurisdiction over a petition to vacate an arbitral award is the amount awarded in the arbitration proceeding, not the sum claimed in the underlying action. However, we do not need to decide whether it is ever possible for federal question jurisdiction to lie if a petitioner complains about an arbitrator's manifest disregard of federal law. Luong's petition shows on its face that his complaint is not about manifest disregard, which occurs only when an arbitrator recognizes the applicable law yet ignores it, but is rather about the arbitrator's misinterpretation and misapplication of *Toyota Motor Manufacturing, Inc. v. Williams,* 534 U.S. 184, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002). This we have no authority to consider. Lacking any independent basis for subject matter jurisdiction, the court had to dismiss the petition. Accordingly, we affirm.

## I

On August 24, 2000, Luong (a citizen of California) brought an action for discrimination in violation of the ADA against Circuit City (a citizen of Virginia) in federal district court, seeking damages in excess of $75,000. Circuit City moved to compel arbitration based on an arbitration agreement. The district court granted the petition to compel and dismissed the action.

The dispute was arbitrated. The arbitrator found that Luong was neither disabled nor regarded as disabled under *Toyota,* thus Circuit City did not violate the ADA.

Luong then filed a petition to vacate the arbitration award in the district court pursuant to Section 10 of the Federal Arbitration Act, 9 U.S.C. § 10(FAA).[1] This petition, filed June 17, 2002, premised federal jurisdiction only on the FAA, but an amended petition cured that deficiency by alleging diversity of citizenship with more than $75,000 in controversy and a federal question on the ground that the arbitrator's award was rendered in manifest disregard of the law. In so doing, the petition asserts, the arbitrator "ignored federal law as well as refused to correctly apply federal law." A copy of the arbitrator's decision is attached as an exhibit to the petition and incorporated by reference.

■ Circuit City responded with a motion to dismiss Luong's petition for lack of subject matter jurisdiction, which the court granted. This timely appeal followed, and we have jurisdiction pursuant to 28 U.S.C. § 1291.[2]

## II

■ It is well-settled that federal courts must have an independent basis for

---

1. Section 10 provides that a federal court may vacate an arbitration award:

   (1) where the award was procured by corruption, fraud, or undue means;
   (2) where there was evident partiality or corruption in the arbitrators, or either of them;
   (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other

   misbehavior by which the rights of any party have been prejudiced; or
   (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.
   9 U.S.C. § 10(a)(1)-(4).

2. We review de novo the district court's dismissal for lack of subject matter jurisdiction. *Crum v. Circus Circus Enters.,* 231 F.3d 1129, 1130 (9th Cir.2000).

federal jurisdiction to hear claims under the FAA, *see, e.g., Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n. 32, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *Southland Corp. v. Keating*, 465 U.S. 1, 15 n. 9, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984), and that 9 U.S.C. § 10 does not provide it, *see Garrett*, 7 F.3d at 884. Hence, a petitioner seeking to vacate an award must establish diversity of citizenship or a federal question.[3]

## A

Luong maintains that he has satisfied the requirements for diversity as the parties are citizens of different states and the claim at the beginning of the case was for more than $75,000. He contends that it is the claim, rather than the award, which determines the amount in controversy and that we so held in *American Guaranty Co. v. Caldwell*, 72 F.2d 209 (9th Cir.1934). Further, in his view, the district court had acquired jurisdiction over the same case and controversy, with the same parties, when it asserted jurisdiction to compel the case to arbitration and did not lose this jurisdiction simply because the amount at issue had changed. As Luong puts it, the arbitrator's ruling was just another link in the chain of events that originated with the original filing in district court. We disagree.

■ The original action, initiated August 24, 2000 by Luong's filing of a complaint for violation of the ADA, was *dismissed* on March 27, 2001. The court neither stayed the action nor retained jurisdiction. That action was over and done with when the petition to vacate was filed. The petition to vacate, filed June 17, 2002, initiated a new, and separate, proceeding. *Cf. Green Tree Fin. Corp.—Ala. v. Randolph*, 531 U.S. 79, 86, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000) ("The FAA ... permit[s] parties to arbitration agreements to bring a separate proceeding in a district court to enter judgment on an arbitration award once it is made (or to vacate or modify it),...."); *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 380–81, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994) (courts have ancillary jurisdiction to enforce settlement agreement only if action has not been dismissed). The vacatur proceeding must stand on its own jurisdictional feet. Thus, it is immaterial that the district court had jurisdiction to compel arbitration. This case cannot be a continuation of that action because the action in which arbitration was ordered is no longer pending. Therefore, the district court did not have jurisdiction over Luong's petition to vacate based upon the jurisdiction that it had over the previous, and previously terminated, action.

■ *American Guaranty* does not hold to the contrary. There, the petitioner initially sought to confirm an arbitration award of $32,500 in state court, but the action was removed to federal court. On American Guaranty's motion, the district court vacated the award on the ground that the arbitrator was biased, and directed rehearing without dismissing the action. The second arbitration resulted in an

---

**3.** This is quite an odd construct, as we and others have observed. *See, e.g., Garrett*, 7 F.3d at 883 (§ 10 of the FAA on its face appears to confer subject matter jurisdiction, but precedent is to the contrary); *Kasap v. Folger Nolan Fleming & Douglas, Inc.*, 166 F.3d 1243, 1246 (D.C.Cir.1999); *Minor v. Prudential Secs., Inc.*, 94 F.3d 1103, 1105 (7th Cir.1996) (noting that the FAA is "something

of an anomaly in the field of federal-court jurisdiction"). The oddity is not lessened by superimposing the regime of diversity jurisdiction upon a proceeding that is a creature of federal law—the Federal Arbitration Act—and, in this case, involves an underlying action that arises under a federal statute, the ADA. Nevertheless, the need for an independent basis for federal jurisdiction is clear.

award of zero dollars. Caldwell filed a motion to vacate in the action that was still pending in district court, which was granted. American Guaranty appealed, arguing that the district court lacked diversity jurisdiction over Caldwell's petition to vacate the award because the amount of the award was less than $3,000, the jurisdictional requirement at the time. We held that there was jurisdiction. We explained that the district court first acquired jurisdiction in the matter when the controversy as to the original award of $32,500 was transferred by removal to the federal court, and that it retained jurisdiction to hear the petition to vacate the second award in the same action because that action was still pending. This is consistent with the general rule that "diversity jurisdiction is determined at the time the action commences, and a federal court is not divested of jurisdiction if a party subsequently moves to another state, or if the amount in controversy subsequently drops below the minimum level." *Hill v. Blind Indus. and Servs.*, 179 F.3d 754, 757 (9th Cir.1999) (citations omitted), *amended by* 201 F.3d 1186 (9th Cir.2000).

In a passage upon which Luong particularly relies, we observed that in addition to the record showing the original award of $32,500, it also disclosed evidence that Caldwell had suffered damages greater than $100,000 and "[i]t is the amount in controversy which determines jurisdiction, not the amount of the award." *Am. Guar.*, 72 F.2d at 211. While this remark in isolation lends support to Luong's position that the amount which counts is the amount that is claimed, it is unlikely that we meant to *hold* that jurisdiction turns on the amount in controversy rather than the amount of the award given the posture in which the issue arose and the context in which the remark was made. Certainly jurisdiction did not turn on any such distinction in that case. *American Guaranty* has never been cited for this proposition, and two circuits have since taken a contrary view. *See Baltin v. Alaron Trading Corp.*, 128 F.3d 1466, 1472 (11th Cir.1997) (it was a legal certainty that amount in controversy was less than the $50,000 required when the maximum remedy sought by party against whom a $36,284.69 award was rendered was vacatur); *Ford v. Hamilton Invs., Inc.*, 29 F.3d 255, 260 (6th Cir.1994) (a claim by the losing party for vacation of an arbitration award in an amount less than the jurisdictional minimum is not sufficient for diversity jurisdiction).[4]

---

4. *Cf. Bull HN Info. Sys., Inc. v. Hutson*, 229 F.3d 321, 328–29 (1st Cir.2000) (measuring the amount in controversy by the amount at stake in the entire arbitration when a bifurcated arbitration results in a partial award and enforcement proceedings under the FAA are brought as to the partial award; in dicta, recognizing *Baltin* and suggesting alternative rationale for also measuring the amount in controversy by the claim in the case of a non-partial award).

Some district courts have looked through the award to the claim, others have looked only to the amount of the award. *See Evergreen Forest Prods., LLC v. Bank of Am.*, 262 F.Supp.2d 1297, 1308 (M.D.Ala.2003) (amount-in-controversy requirement met when plaintiff sought to enjoin award in favor of bank for $9.5 million); *Goodman v. CIBC Oppenheimer & Co.*, 131 F.Supp.2d 1180, 1184 (C.D.Cal.2001) ("the amount in controversy is equal to the arbitration award regardless of the amount sought in the underlying arbitration"); *Giangrande v. Shearson Lehman/E.F. Hutton*, 803 F.Supp. 464, 468 (D.Mass.1992) (no diversity when plaintiff who wanted to vacate award and sought a remand had asked for and was awarded less than jurisdictional minimum before arbitrator); *Hough v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 757 F.Supp. 283, 286 (S.D.N.Y. 1991) (looking to possible award, measured by the statement of claim before the arbitrator, that might result from rehearing as motion is to vacate and remand for rehearing), *aff'd*, 946 F.2d 883 (2d Cir.1991); *Quick & Reilly, Inc. v. Saglio*, 717 F.Supp. 822, 824

Luong argues that we should not be influenced by *Baltin* or *Ford* because in each, the party seeking vacatur wanted to pay less money than awarded and did not seek to vacate an award that might provide more money. He posits that in those circumstances, it was legally certain that the amount at issue on the petition to vacate was less than the jurisdictional amount whereas it cannot be certain when, as here, the petitioner stands to gain more than the zero dollars awarded if he prevails.[5] This does not necessarily follow, however, because the court has discretion whether to order rehearing. *See* 9 U.S.C. § 10(b) (rehearing may be granted if an award is vacated and the time for making an award has not expired).[6] Regardless, Luong's scenario would mean that the jurisdictional amount would be measured differently depending upon the position of the party moving to vacate and the potential for rehearing with a larger recovery for the arbitration plaintiff. We are not persuaded that jurisdiction should turn on contingencies such as these.

There is merit to a rule that is clear and applicable across the board. While Luong might (or might not) fare better if the award were vacated, the controversy now before the court is over the award itself. The amount awarded is disclosed on the face of the petition. It is legally certain that no different amount will be at issue in the federal proceeding, because a federal court lacks authority to award anything more or less.

An argument can be made that jurisdiction should always be governed by the value of the arbitration plaintiff's claim without regard to the amount of the award. *Cf., e.g., Hunt v. Wash. State Apple Adver. Comm'n,* 432 U.S. 333, 347, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977) (in actions seeking declaratory or injunctive relief the amount in controversy is measured by the value of the object of the litigation). Focusing on the amount claimed at the onset of *arbitration* is arguably analogous to how federal courts acquire jurisdiction based on the amount claimed at the outset of *litigation* and continue to have it, even if the judgment turns out to be less than the jurisdictional minimum. *See Bull HN,* 229 F.3d at 329 (discussing the analogy). But the analogy fails to hold because arbitration is a non-judicial forum that exists apart from the courts. This matter was arbitrated, not litigated, and whether jurisdiction would have existed, for example, to vacate a judgment entered for less than the jurisdictional amount if it had been litigated, is a totally different issue. An arbitrated case becomes subject to judicial review in federal court only after the arbitral award is rendered when a motion or application to vacate (or to confirm or modify) is filed; it is at the time of filing that application, not before, when jurisdictional requirements must exist.

Other considerations, as well, counsel against looking through to the claim in the underlying action. To look beyond the

---

(S.D.Fla.1989) (petition to confirm dismissed for lack of diversity jurisdiction as award was less than jurisdictional minimum); *Taunton Mun. Light Plant Comm'n v. Paul L. Geiringer & Assocs.,* 560 F.Supp. 1249, 1250 n. 1 (D.Mass.1983) (party who moved to vacate could suffer more than jurisdictional amount in damages if required to comply with award), *aff'd,* 725 F.2d 664 (1st Cir.1983).

**5.** The "legal certainty" test comes from *St. Paul Mercury Indemnity Co. v. Red Cab Co.,*

303 U.S. 283, 288–89, 58 S.Ct. 586, 82 L.Ed. 845 (1938), where the Court held that a plaintiff's claim, if apparently made in good faith, controls for purposes of diversity jurisdiction and that "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal."

**6.** Luong's request for remand fails on the face of the petition in any event because, as we shall explain, he cannot make out a claim for manifest disregard of law.

award that is actually in controversy would require that we depart from the principle that jurisdiction is determined by the matter in controversy that appears on the face of a well-pleaded document which initiates the particular action—normally in federal practice, the complaint, see Fed. R. Civ. P. 3, but in proceedings under the FAA, a motion or application (captioned "petition" in this case), see 9 U.S.C. §§ 10, 12. Luong's petition to vacate does not seek to recover damages for disability discrimination; that is what he seeks in the underlying action. His petition seeks to vacate an award with which he is unhappy. We do not usually go behind the document that initiates a federal action to see what dollars are ultimately at stake, yet this is what courts would have to do if the matter in controversy were to be measured by something other than the amount of the award.[7] Finally and most importantly, federal courts have very limited jurisdiction when it comes to reviewing arbitration awards. For the same reasons that federal question jurisdiction for purposes of § 10 does not depend upon the nature of the claim in the underlying dispute, diversity jurisdiction for purposes of § 10 should not depend upon the amount of the claim in the underlying dispute.

Therefore, we conclude that the better rule is that the matter in controversy on a petition to vacate an arbitration award should be measured by the amount of the award.[8] As the amount of the award in this case is below the jurisdictional threshold of § 1332(a), Luong has failed to establish diversity as an independent basis for jurisdiction.

**B**

Alternatively, Luong argues that the district court should have federal question jurisdiction over his petition to vacate because he alleged that the arbitrator's award was rendered in manifest disregard of federal law. He invites us to follow *Greenberg v. Bear, Stearns & Co.,* 220 F.3d 22, 27 (2d Cir.2000), *cert. denied,* 531 U.S. 1075, 121 S.Ct. 770, 148 L.Ed.2d 669 (2001), where the Second Circuit held that when a petition to vacate "complains principally and in good faith that the award was rendered in manifest disregard of federal law, a substantial federal question is presented and the federal courts have jurisdiction to entertain the petition."

*Greenberg* makes a forceful case for why the *ground* asserted in the petition to vacate makes a difference for purposes of federal question jurisdiction. Both the Second Circuit and the Ninth recognize a non-statutory escape valve from an arbitral award where the arbitrator has manifestly disregarded the law. *See DiRussa v. Dean Witter Reynolds Inc.,* 121 F.3d

---

**7.** A petition to vacate is unlike a petition to compel arbitration, because in a petition to compel arbitration the only amount before the court is the amount being claimed in the lawsuit that triggered the defendant to move to compel arbitration. Accordingly, it makes sense for a court to measure the amount in controversy by the amount of the possible award in arbitration when considering whether to compel arbitration, as that is the amount sought by the plaintiff in the complaint. *See, e.g., Doctor's Assocs., Inc. v. Hamilton,* 150 F.3d 157, 160 (2d Cir.1998) (citing Second Circuit precedent and cases from the Third and Fifth Circuits to note that "[i]n the con-

text of a petition to compel arbitration ... courts [should] look through to the possible award resulting from the desired arbitration ...."); *see also Minor v. Prudential Secs., Inc.,* 94 F.3d 1103, 1106–07 (7th Cir.1996) (discussing the differing federal interests in compelling arbitration and reviewing arbitration decisions under the FAA).

**8.** We note that two commentators agree with this view in the context of a motion to confirm an award. *See* Daniel D. Derner & Roger S. Haydock, *Confirming an Arbitration Award,* 23 Wm. Mitchell L. Rev. 879, 883–84 (1997).

818, 821 (2d Cir.1997); *Todd Shipyards Corp. v. Cunard Line, Ltd.,* 943 F.2d 1056, 1059–60 (9th Cir.1991) (suggesting that this ground really defines § 10(d)); *Sheet Metal Workers Int'l Ass'n Local Union # 420 v. Kinney Air Conditioning Co.,* 756 F.2d 742, 746 (9th Cir.1985). Given this additional ground for vacatur, the court in *Greenberg* reasoned that

> [i]n contrast to grounds of review that concern the arbitration process itself— such as corruption or abuse of power— review for manifest disregard of federal law necessarily requires the reviewing court to do two things: first, determine what the federal law is, and second, determine whether the arbitrator's decision manifestly disregarded that law. This process so immerses the federal court in questions of federal law and their proper application that federal question subject matter jurisdiction is present.

*Greenberg,* 220 F.3d at 27. On the other hand, it can be argued that this rationale undercuts, if it does not squarely conflict with, the notion that federal question jurisdiction for purposes of § 10 cannot be derived from the federal nature of the underlying action but must be established independently. *See Garrett,* 7 F.3d at 884–85 & n. 3.

■ We need not resolve this issue here, however, because "manifest disregard of the law" has a well-defined meaning that Luong's petition cannot possibly meet. "Manifest disregard of the law means something more than just an error in the law or a failure on the part of the arbitrators to understand or apply the law." *Mich. Mut. Ins. Co. v. Unigard Sec. Ins. Co.,* 44 F.3d 826, 832 (9th Cir.1995) (internal quotation marks omitted). "It must be clear from the record that the arbitrators recognized the applicable law and then ignored it." *Id.*

■ Luong's petition falls short of this standard, so there is no basis for federal question jurisdiction regardless of whether we accept the Second Circuit's analysis in *Greenberg.* Luong's complaint is that the arbitrator extended the ruling of *Toyota Motor Manufacturing, Inc. v. Williams,* 534 U.S. 184, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002), and thus disregarded it. However, without expressing a view one way or the other on whether the arbitrator got *Toyota* right, it is clear that the arbitrator did not *ignore* it. Virtually every line of the opinion and award discusses *Toyota* and how it plays out on the facts in Luong's case. That cannot amount to "manifest disregard" and accordingly, cannot be a ground for an independent basis of federal question jurisdiction whether or not it would be if well-pled.

### III

Circuit City's request for attorneys' fees and costs pursuant to Federal Rules of Civil Procedure 38 and 39, and Ninth Circuit Local Rule 30–2, is denied. Luong's appeal raises issues of first impression in this circuit and is not frivolous.

### IV

#### *Conclusion*

■ As a basis of federal jurisdiction independent of the underlying claims must be shown for a federal court to hear a petition to vacate an arbitration award pursuant to Section 10 of the Federal Arbitration Act, the matter in controversy for purposes of diversity jurisdiction over a petition to vacate an arbitral award is the amount awarded in the arbitration proceeding, not the sum claimed in the underlying action. The award that Luong seeks to vacate is for zero dollars, which does not meet the minimum for diversity jurisdiction under 28 U.S.C. § 1332(b).

Nor does he establish a basis for federal question jurisdiction. Although his petition avers that the award was rendered in manifest disregard of the law, the petition discloses that the law involved was the Supreme Court's decision in *Toyota Motor Manufacturing, Inc. v. Williams.* The arbitrator's opinion and award, which is part of the petition, makes clear on its face that the arbitrator knew about *Toyota* and did not ignore it. We cannot review an arbitrator's errors in law or failure to understand or apply it, which is the most that Luong's petition alleges. Therefore, no claim is set forth that requires us to decide whether federal question jurisdiction lies on a well-pled ground of manifest disregard of federal law.[9]

AFFIRMED.

KOZINSKI, Circuit Judge, dissenting.

In *American Guaranty Co. v. Caldwell,* 72 F.2d 209 (9th Cir.1934), we held that it is the "amount in controversy which determines jurisdiction, not the amount of the award." *Id.* at 211. The majority today holds directly to the contrary. *See* Maj. op. at 1194. The opinion recognizes what *American Guaranty* said, but dismisses it on the ground that "it is unlikely that we meant to *hold* that jurisdiction turns on the amount in controversy rather than the amount of the award given the posture in which the issue arose and the context in which the remark was made. Certainly jurisdiction did not turn on any such distinction in that case." *Id.* at 1192. With all due respect to my colleagues, they are mistaken. *American Guaranty* says very clearly that it is "the amount in controversy which *determines* jurisdiction." 72 F.2d at 211 (emphasis added). The statement is phrased as a rule of law, not idle

chatter; if this is not a holding, I'm not sure what is.

What we *can* say about *American Guaranty* is that the court there also had an alternative ground for decision, based on the fact that the district court had retained jurisdiction over the case when it sent the parties to arbitration. *Id.* at 211–12. We could just as easily characterize that passage in *American Guaranty* as a meaningless distraction added for local color after the court had determined there was jurisdiction based on the amount in controversy, but that would be equally wrong. Quite clearly, the *American Guaranty* opinion had alternative rulings: It held there was jurisdiction in the district court because the amount in controversy was satisfied *and* because the court had retained jurisdiction when the parties were engaged in arbitration. The following excerpt from the case bears this out:

In addition to the record showing this original award of $32,500, it further discloses that evidence had been offered showing appellee had suffered damages in excess of $100,000.... It is the amount in controversy which determines jurisdiction, not the amount of the award.

The District Court first acquired jurisdiction in this matter when the controversy as to the original award of $32,500 was transferred by appellant's application from the state court to the federal court. This application of appellee to set aside the award giving him nothing was made in the same court, filed in the same action, involving the same controversy between the same parties in which the District Court had originally acquired jurisdiction upon the application of appellant, and which was still

---

**9.** Given this disposition, we need not reach Circuit City's alternative argument for affir-

mance based on the statute of limitations.

pending. The contention that the District Court was without jurisdiction to set aside the award is without merit. *Id.* (citation omitted).

We have no basis for choosing either of these grounds as the holding and dismissing the other as dicta. On the contrary, "where a decision rests on two or more grounds, none can be relegated to the category of *obiter dictum.*" *Woods v. Interstate Realty Co.,* 337 U.S. 535, 537, 69 S.Ct. 1235, 93 L.Ed. 1524 (1949). Even those who take a narrow view of what constitutes binding precedent recognize as much. *See United States v. Johnson,* 256 F.3d 895, 920 n. 5 (9th Cir.2001) (en banc) (Tashima, J., concurring) ("Of course, [alternative holdings and dicta] are not the same."). As an alternative holding, our statement that "[i]t is the amount in controversy which determines jurisdiction, not the amount of the award," *American Guaranty,* 72 F.2d at 211, is binding on us. If my colleagues don't like that rule, they must make a sua sponte en banc call.

The majority seems to be swayed by the fact that "two circuits have since taken a contrary view," but they are mistaken. In *Ford v. Hamilton Investments, Inc.,* 29 F.3d 255 (6th Cir.1994), the Sixth Circuit held that the district court lacked jurisdiction over a claim to vacate an arbitration award that fell below the jurisdictional minimum. *Id.* at 260. But, because of the posture of the case, the amount in controversy just happened to equal the amount of the arbitration award. The party who sought arbitration in *Ford* was satisfied with the award of $30,524.16, while the party against whom the award was entered was trying to vacate it. Thus, regardless of the ultimate outcome of the proceedings, no more than about $30,000 would actually change hands, which was less than the $50,000 jurisdictional amount in controversy. In Luong's case, however, the amount in dispute between the parties

is more than $178,000—the amount to which Luong claims to be entitled. If Luong persuades the district court to vacate the arbitration award, Luong will continue to press his claim for an award in that amount.

My colleagues seem to believe that the Eleventh Circuit rejected *American Guaranty* in *Baltin v. Alaron Trading Corp.,* 128 F.3d 1466 (11th Cir.1997), but they totally misread the case. *Baltin* was a petition to set aside an arbitration award in the amount of $36,284.69, brought by the party against whom the award was entered. The Eleventh Circuit said: "The maximum remedy sought by the Baltins was the vacatur of the arbitration award of $36,284.69. Diversity jurisdiction did not exist because it was a 'legal certainty' that the amount in controversy was less than $50,000, the amount required for federal diversity jurisdiction at the time the Baltins filed suit." *Id.* at 1472 (footnotes omitted). In a footnote, the court explained that "[t]he Baltins [against whom the arbitration award was entered] did not request an award modification that would provide *the Baltins* with money. Instead, the Baltins sought merely to reduce or eliminate the arbitration award against them." *Id.* at 1472 n. 16. Clearly the Eleventh Circuit looked to the actual amount in dispute between the parties, not merely to the arbitrator's award, else what would have been the point of footnote sixteen? *Baltin* thus adopted the *American Guaranty* rule. By abandoning *American Guaranty,* the majority is creating a split with the Eleventh Circuit.

Moreover, the rule my colleagues adopt makes no sense, as it causes the amount in controversy to turn on the arbitrator's possibly erroneous ruling, rather than the actual amount in dispute between the parties. The absurdity of the rule can be demonstrated by considering the following

example: X claims Y owes him $100,000 in a contract dispute. The case is ordered to arbitration, and the arbitrator comes up with an award of $80,000. X claims he was entitled to more and petitions to have the award vacated. Under the majority's approach, the district court would have jurisdiction. But if the arbitrator happens to award only $30,000—or nothing at all—because of the same claimed legal error, the district court would lack jurisdiction. There is no principled distinction between the two cases; if the petitioner prevails in either case, the award will be vacated and petitioner will be back in arbitration seeking his full $100,000. I can see no logic at all in letting the very award that is the fruit of the claimed error govern the amount in controversy.

" '[W]here a panel confronts an issue germane to the eventual resolution of the case, and resolves it after reasoned consideration in a published opinion, that ruling becomes the law of the circuit, regardless of whether doing so is necessary in some strict logical sense.' " *Miranda B. v. Kitzhaber*, 328 F.3d 1181, 1186 (9th Cir.2003) (per curiam) (quoting *Johnson*, 256 F.3d at 914). *American Guaranty* confronts the jurisdictional issue and resolves it in terms clearly applicable to our case. It doesn't matter whether that ruling was necessary; it suffices that it was a ruling. The Eleventh Circuit has followed the same path in *Baltin*. With one stroke, the majority creates both an intra- and inter-circuit conflict. This is too big a leap for me. I dissent.